IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

J.G. WENTWORTH
ORIGINATIONS, LLC,

    *Plaintiff,*

    v.

EBONY MOBLEY, et al.,

    *Defendants.*

Civil Action No.: 11-cv-1406

**MEMORANDUM OPINION**

On May 24, 2011, Fidelity & Guaranty Life Insurance Company ("F&G Life") filed a Complaint For Interpleader ("Complaint," ECF 1) against several defendants: Ebony Mobley ("Mobley");[1] J.G. Wentworth Originations, LLC ("J.G. Wentworth"); Woodbridge Investments, LLC ("Woodbridge"); St. Paul Fire and Marine Insurance Company ("St. Paul"); and Fidelity & Guaranty Life Assignment, LLC ("F&G Assignment"). The gravamen of the Complaint is that F&G Life could not ascertain the party to whom it was to remit certain annuity payments that had been owed to Mobley (the "Mobley payments" or the "annuity payments"), but which Mobley had apparently sold to others, including Woodbridge and J.G. Wentworth, formerly Henderson Receivables Limited Partnership ("Henderson"). *Id.* ¶ 31. Claiming that it is "at risk of multiple litigation and payment obligations," *id.*, F&G Life filed with the Complaint a "Motion For Interpleader, Discharge, and Injunction." *See* ECF 2.

On June 1, 2011, this Court issued an Order (the "Interpleader Order," ECF 13) instructing "[a]ll of the Defendants in this case [to] interplead and settle among themselves their

---

[1] Mobley was previously known as Ebony Robinson, Counterclaim Exhs. A, B (ECF 67-1, 67-2), and Ebony Jones. *See* Memorandum in Support of F&G Life's Motion to Dismiss the Counterclaim, at 1 (ECF 68-1).

respective rights and claims to the disputed Annuity payments (as those payments are defined in the Complaint for Interpleader) . . . without further involvement by F&G Life[.]"  *Id.* ¶ 1.  The Interpleader Order also "enjoined and restrained [defendants, their agents, attorneys, and/or representatives] from instituting and/or from further prosecuting any proceedings in any State or United States court against F&G Life for and/or on account of the disputed Annuity payments . . . ."  *Id.* ¶ 4.  Finally, the Interpleader Order stated: "F&G Life hereby is discharged from further liability under the Annuity" and "dismissed from this case, with prejudice . . . ."  *Id.* ¶¶ 6-7.

Litigation proceeded among the remaining parties.  In a status report of October 21, 2011, the parties reported that they had "learned that Woodbridge may have assigned its rights to Sierra Finance," and planned to "amend the action . . . to bring in Sierra Finance as a party."  *See* ECF 40.  Accordingly, on January 9, 2012, F&G Assignment filed a motion to add Sierra Finances, LLC ("Sierra") as an additional crossclaim defendant.  *See* ECF 51.  J.G. Wentworth filed a similar motion on January 31, 2012.  *See* ECF 54.  Both motions were granted.  *See* ECF 53, 57.

Sierra responded to the crossclaims on April 3, 2012.  *See* ECF 66, 67.  It also lodged crossclaims of its own, as well as a counterclaim (the "Counterclaim") against F&G Life, Mobley, and Woodbridge.  *See* ECF 67.

F&G Life has filed a motion to dismiss the Counterclaim ("Motion," ECF 68), along with a supporting memorandum ("Memo," ECF 68-1).  Sierra has opposed the Motion ("Opposition," ECF 72), to which F&G Life has replied ("Reply," ECF 77).  No hearing is necessary to resolve the Motion.[2]  *See* Local Rule 105.6.

### Factual Background

On or about March 13, 2007, Woodbridge and Mobley entered into a "Structured

---

[2] Jurisdiction over the interpleader action and the Counterclaim is proper under 28 U.S.C. § 1335 and 28 U.S.C § 1332.

Settlement Annuity Sale and Assignment Agreement,"[3] pursuant to which Mobley, in exchange for $12,000, assigned six of the annuity payments to Woodbridge.   Counterclaim ¶ 2.   The payments were lump sums due on the following dates and in the following amounts: June 15, 2011-$12,000; August 1, 2017-$14,265; August 1, 2018-$14,265; August 1, 2019-$14,265; August 1, 2020-$14,265; and June 15, 2021-$16,000.   *Id.*   Woodbridge obtained a court order in South Carolina state court pursuant to that state's "Structured Settlement Protection Act," which approved the transaction.   *Id.* ¶ 3.[4]

Sierra avers that F&G Life was "provided with and received the required statutory notice with respect to" the court order, and at no time "raise[d] any objections to Mobley's assignment of the subject payments."   *Id.* ¶¶ 5-6.   Thereafter, Woodbridge "assigned all of its right, title and interest in this assignment transaction to Sierra, which, at the time, was owned by [its] previous owners."   *Id.* ¶ 7.[5]   Put another way, Sierra asserts that it is the successor by assignment to Woodbridge's alleged interest in the disputed annuity payments.

In early 2010, "the present owners of Sierra were performing their due diligence on a portfolio of structured settlement assignment transactions owned by [the old] Sierra in contemplation of the new owners purchasing Sierra from the previous owners."   *Id.* ¶ 8.   The present owners purchased Sierra on or about July 1, 2010, but Sierra avers that "the Mobley

---

[3] A copy of this agreement is appended to ECF 67 as Exhibit A.

[4] A copy of the court order is appended to ECF 67 as Exhibit B.   The court order provided that Woodbridge would receive a lump sum payment in the amount of $14,000, due on June 15, 2016, instead of the lump sum payment of $16,000, due on June 15, 2021.   *Id.* ¶ 4.   In its Memo, at 3, F&G Life avers that this alteration was made after "F&G Life notified Woodbridge that one of the payments…had previously been sold by Ms. Mobley in a prior transaction with another company."   Of course, "as it turned out, Ms. Mobley sold her rights to these six Annuity payments twice, prompting F&G Life to file an interpleader action with this Court."   *Id.*

[5] A copy of the assignment from Woodbridge to Sierra is appended to ECF 67 as Exhibit C.   It is undated, and it is unclear from Sierra's submissions when that assignment occurred.

transaction" was "not included in the purchase," as there was "no verification from F&G Life" that it would pay the annuity payments to Woodbridge's assignee, Sierra.  *Id.* ¶ 9.

Sierra's present owners then contacted Max Stadfeld, Esq., counsel for F&G Life.  *Id.* ¶ 11.  The Counterclaim does not state when or how these communications occurred, or what subject they concerned.[6]  But, on July 20, 2010, Stadfeld sent an email to the present owners (the "Stadfeld email") stating, in relevant part:

> Woodbridge reassigned the lump sum payments which are due in 2011, 2016, and 2020 to Sierra.  [F&G Life's] records indicate that the payments are to be sent to Sierra Finances, c/o RCM 30643, f/b/o/ Ebony Robinson, 14525 SW Millikan Way, Beaverton, OR 97005-2343.
>
> If the foregoing information is sufficient for your purposes, just let me know and I can have the confirmation letters sent to you.

*Id.* ¶ 11.[7]  Sierra avers that, "[i]n reliance upon this representation from legal counsel for F&G Life, the new owners of Sierra agreed to purchase the Mobley transaction from the previous owners of Sierra" for the sum of $46,332.74.  *Id.* ¶¶ 12-13.

---

[6] However, as an exhibit to its Opposition, F&G Life offered an email of July 14, 2010 from the present owners of Sierra to Stadfeld, stating in relevant part:

> I called in regards to deals we have acquired, through the purchase of a structured settlement origination company, Sierra Finances LLC.
>
> In the portfolio we acquired, there are 2 OM Financial Deals for which we are missing documentation.  In order to clean up our files, we are looking for confirmation that OM Financial has received the court order and will be forwarding payments to Sierra Finances (either an acknowledgement letter or stipulation).
>
> The deals are as follows:
>
> . . .
>
> Original Annuitant – Ebony Robinson
>
> Policy #- 1676881

Opposition, Exh. 2 (ECF 68-3).

[7] A copy of the Stadfeld email is appended to ECF 67 as Exhibit D.

On June 15, 2011, after Sierra did not receive the first payment to which it believed it was entitled, it "began to investigate the missing payment and learned of this interpleader action," and of the fact that there were competing claims to the annuity payments. *Id.* ¶ 14. Accordingly, Sierra lodged two claims in the Counterclaim against F&G Life, detailed below.[8]

Count IV sets forth Sierra's claim against F&G Life for "Detrimental Reliance/Promissory Estoppel." Sierra alleges that "[t]he email confirmation from Max Stadfeld on behalf of F&G Life constituted a promise, assurance and undertaking from F&G Life that Sierra would receive the payments," *id.* ¶ 35; "F&G Life knew or had reason to know that its email confirmation would be relied upon by Sierra and that Sierra would take action in reliance upon it," *id.* ¶ 36; Sierra's new owners indeed relied on the Stadfeld email in deciding to purchase "the Mobley transaction," *id.* ¶ 37; such reliance was justified, *id.* ¶ 38; and, "[a]s a direct result of its reliance on the Max Stadfeld e-mail, Sierra has been damaged." *Id.* ¶ 39.

In Count V, "Negligent Misrepresentation," Sierra avers that the Stadfeld email "expressly represented to Sierra that Woodbridge reassigned the lump sum payments to Sierra" and "that Sierra would receive the Assigned Payments," and "impliedly represented to Sierra that F&G Life recognized the validity of the assignment and would honor it." *Id.* ¶ 45. It asserts that these representations "were material facts upon which Sierra relied in deciding to include the Mobley transaction in its purchase," and that F&G Life "knew and/or had reason to know that its email confirmation would be relied upon by Sierra and that Sierra would take action in reliance upon it." *Id.* ¶¶ 46-47. Sierra asserts that the "new owners" relied on the Stadfeld email "in deciding to purchase the Mobley transaction," and were justified in so relying. *Id.* ¶ 48. It argues that the "representations and omissions in the email confirmation were materially false

---

[8] Count I applies to Mobley. Counts II and III are lodged against Woodbridge.

and misleading," *id.* ¶ 49, and "were carelessly and recklessly made by F&G Life, through its authorized agent and legal counsel, to Sierra." *Id.* ¶ 50.  Further, Sierra insists that, "[a]s a direct and proximate result of the negligence misrepresentations [sic] made by F&G Life, Sierra has been damaged." *Id.* ¶ 51.

## Standard of Review

A defendant may test the adequacy of a complaint by way of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008); *see Aschroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).

Whether a complaint adequately states a claim for relief is judged by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Twombly*, 550 U.S. at 554-55.  Rule 8(a)(2) provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although the plaintiff need not include "detailed factual allegations," the rule demands more than bald accusations or mere speculation.  *Twombly*, 550 U.S. at 555.  To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."  *Id.* at 556 (brackets in original) (internal quotation marks omitted).  A complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient.  *Id.* at 555.

When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).   The court may properly consider documents "attached to the complaint, as well those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citations omitted).   However, the court is not required to accept legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385–86 (4th Cir. 2009).   And, if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (citation omitted).

## Contentions

F&G Life insists that the Counterclaim must be dismissed because the Interpleader Order "enjoined and restrained" defendants "from instituting and/or from further prosecuting any proceedings in any State or United States court against F&G for, and/or on account of the disputed annuity payments . . ."; "discharged F&G Life from any further liability related to disputed annuity payments"; and "dismissed F&G Life from this case with prejudice."  Motion ¶ 1 (citing Counterclaim ¶¶ 4, 6-7).   It also asserts that this Court lacks personal jurisdiction over F&G Life "[b]ecause of the dismissal, and for want of a new summons and service of process." *Id.* ¶ 2 (citing *Omni Capital Int'l, Ltd. v. Wolff & Co.,* 484 U.S. 97, 104 (1987); Fed. R. Civ. P. 4(e); Fed. R. Civ. P. 4(h)).   Similarly, F&G Life argues that, because it is "neither a party, nor an 'opposing party' to this action, it cannot be subject to a counterclaim."  *Id.* ¶ 3 (citing Fed. R.

7

Civ. P. 13).   Moreover, F&G Life asserts: "Because the plain language of the Counterclaim makes it clear that individual 'new owners' of Sierra individually received the alleged communication giving rise to the Counterclaim, and because the 'new owners' were the ones who allegedly relied on the communication in deciding to purchase the Mobley payments, the 'new owners' of Sierra, and not Sierra itself, are the proper parties to this action." *Id.* ¶ 4.

In addition, F&G Life argues that the Counterclaim fails to state claims upon which relief can be granted. *Id.* ¶ 5.   As to Count IV, it asserts that the detrimental reliance claim fails because "F&G Life did not make a promise to Sierra or its new owners that would lead to reliance." *Id.* ¶ 6.   F&G Life also insists that "there are no facts plead [sic] that demonstrate that F&G Life had any reason to know that the new owners would rely on information provided in deciding whether or not to buy the Mobley Payments." *Id.*   And, it contends that "Sierra did not plead any facts to establish that its alleged harm can be avoided through enforcement of the alleged promise," because "the fate of the Mobley payments would nonetheless be contingent upon the Court's determination of who shall receive the payments." *Id.*

As to Count V, F&G Life asserts that the negligent misrepresentation claim fails because "Sierra did not plead any facts to establish that F&G Life made a false representation," as "[t]here is nothing false about" the Stadfeld email, because it "simply identified F&G Life's records had [Sierra] as the designated recipient of the payments." *Id.* ¶ 7.   In F&G Life's view, "currently it is impossible to determine falsity, because the Court has yet to determine who is entitled to receive the Mobley payments." *Id.*   Moreover, F&G Life insists that the Counterclaim "fails to establish the element of duty because it fails to show that there is and [sic] 'intimate nexus' between F&G Life and Sierra." *Id.*

Further, F&G Life argues that Sierra's claims are moot because, "even if F&G Life is required to pay Sierra for the Mobley payments, Sierra (as assignee of Woodbridge's position) is obligated by Court Order to indemnify and hold F&G Life harmless for any liability it incurs with respect to the Mobley payments." *Id.* ¶ 8.

Sierra counters that the Interpleader Order did not grant F&G Life a "universal, comprehensive, all encompassing, full discharge, waiver and release from any and all possible claims that could be asserted against [it] by the interpleaded defendants."  Opposition at 3.  It suggests that its claims should not be cut off by the Interpleader Order because it was not joined as a party until after the Order was entered, and thus it had no opportunity to present its claims before F&G Life was "discharged."  *Id.* at 5.  Sierra also maintains that any issues regarding the posture of the Counterclaim can be remedied by its filing of third-party claims against F&G Life and serving F&G Life anew.  *Id.* at 7.  Finally, Sierra insists that it has alleged facts sufficient to state a claim for relief in both Counts IV and V.  *Id.* at 9-12.

## Discussion

*A.  Interpleader*

As a threshold matter, I must address F&G Life's contention that Sierra is barred from asserting its Counterclaim against F&G Life by virtue of the Interpleader Order, even though F&G Life had not named Sierra in the initial interpleader complaint, and Sierra was not a party to the case when the Interpleader Order was issued.

Fed. R. Civ. P. 22 allows a party (often referred to as the "stakeholder") to file a claim for interpleader when confronted with "claims that may expose [the party] to double or multiple liability."  Interpleader "affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the

controversy and satisfy his obligation in a single proceeding."  7 Charles Allen Wright, Arthur

Miller & Mary Kane, Federal Practice & Procedure § 1704, at 540-41 (3d ed. 2001); *see also*

*Equitable Life Ins. Soc. v. Jones*, 679 F.2d 356, 358 n.2 (4th Cir. 1982) (citing Wright & Miller,

Federal Practice & Procedure § 1702, at 362 (1972)).   Generally, a stakeholder seeking

interpleader relief will admit liability regarding the property and deposit the property with the

court, and then will be permitted to withdraw from the proceedings.  *See Prudential Life Ins. v.*

*Hovis*, 553 F.3d 258, 262 (3d Cir. 2007) (quoting *Metro Life Ins. v. Price*, 501 F.3d 271, 275 (3d

Cir. 2007)).   The competing claims to the property may subsequently be resolved without the

further involvement of the stakeholder.  *See id.*

Although a stakeholder's discharge from the interpleader action relieves it of any

responsibility to defend against the competing claims to the property, the Supreme Court has

cautioned that "interpleader was never intended . . . to be an all-purpose 'bill of peace.'"  *State*

*Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 535 (1967).  Historically, courts adhered to a

"no-independent-liability" requirement, which would preclude the initiation of an interpleader

action upon a showing that a stakeholder was independently liable to a claimant.  *See* Wright et

al., *supra*, § 1706 (discussing the "no-independent-liability" requirement for interpleader).

Because Rule 22 did not expressly incorporate the "no-independent-liability"

requirement, courts have wrestled with the extent to which a stakeholder's discharge from a case

under interpleader relieves it of liability for related but independent causes of action by the

claimants.  *Compare Hovis*, 553 F.3d at 260-65 (holding that claimant was barred from asserting

counterclaim against stakeholder based on failure to timely determine that claimant had valid

claim to the disputed property before filing interpleader action), *with Lee v. W. Coast Life Ins.*,

688 F.3d 1004, 1013-14 (9th Cir. 2012) (holding that interpleader does not shield stakeholder

from claimant's negligence counterclaim based on alleged creation of conflict over interpleaded property).  Courts have adopted the rule that a claimant may assert a counterclaim against the stakeholder for conduct *causing* a dispute over the annuity, but not where the counterclaim seeks to subject the stakeholder to liability "for its failure to resolve the controversy over the entitlement in the claimant's favor."  *Lee*, 688 F.3d 1013-14 (discussing *Hovis*).

To my knowledge, the Fourth Circuit has not yet spoken on the issue.  Therefore, I will look to *Hovis* and *Lee* to determine the fate of Sierra's claims against F&G Life.

In *Hovis*, Prudential Insurance filed an interpleader complaint to resolve competing claims to the proceeds of a life insurance policy.  553 F.3d at 259.  The dispute arose when the Prudential representative who had sold the policy became romantically involved with the policyholder, who then submitted a request to Prudential to transfer both the ownership of the policy and primary beneficiary status to the representative.  *Id.* at 259-60.  Before approving the changes, Prudential instituted an investigation into the relationship between the representative and the policyholder, during which time the policyholder died.  *Id.*  When the primary beneficiary discovered the policy change requests, he disputed whether the policyholder had, in fact, signed the requests, and asked Prudential to determine the status of the policy.  *Id.* at 261.  Prudential filed an interpleader action to resolve the dispute.  *Id.*

The representative filed counterclaims against Prudential relating to its alleged failure to process the policy change requests in a timely manner.  *Id.*  The district court granted summary judgment to Prudential on the ground that the interpleader action "shielded it from any liability relating to its failure to resolve the dispute over the interpleaded funds."  *Id.* at 262.  On appeal, the Third Circuit affirmed, because "each of [the representative's] counterclaims concern[ed] Prudential's failure to resolve its investigation in his favor and pay out the life insurance

11

proceeds to him." *Id.* at 264. Thus, "none of the counterclaims [wa]s truly independent of who was entitled to the life insurance proceeds, which [wa]s the issue the interpleader action was brought to settle." *Id.* at 264-65. The court reasoned that, "where a stakeholder is allowed to bring an interpleader action, rather than choosing between adverse claimants, its failure to choose between the adverse claimants (rather than bringing an interpleader action) cannot itself be a breach of a legal duty." *Id.* at 265. Consequently, "where a stakeholder is blameless with respect to the existence of the ownership controversy, the bringing of an interpleader action protects it from liability . . . for any claims directly relating to its failure to resolve that controversy." *Id.*

In *Lee*, the Ninth Circuit drew a similar line in holding that the filing of an interpleader action does not shield the stakeholder from tort liability for negligent conduct that caused the controversy in the first instance. 688 F.3d at 1006. In that case, West Coast Life Insurance issued a life insurance policy with a death benefit. *Id* at 1007. West Coast received numerous change of ownership and beneficiary forms from various family members, some of which were improperly executed by West Coast, resulting in conflicting entitlements. *Id.* West Coast filed an interpleader complaint to resolve the disputes over the death benefits. *Id.*

Several family members filed counterclaims for negligence against West Coast, and upon prevailing, moved for attorney's fees. *See id.* at 1008. Although the district court found that the negligence claims had survived the interpleader action, it determined that resolution of the attorney's fees motion was "cut-off" by interpleader. *Id.* The Ninth Circuit reversed, finding that attorney's fees represented damages from the negligence claim, and thus were recoverable, despite the interpleader action, as "wholly separate and apart from West Coast's failure to award them the policy proceeds." *Id.* at 1014. In so doing, the court held, consistent with *Hovis*, that

"a stakeholder whose alleged tort caused the controversy is not absolved of liability by filing an interpleader action," whereas "a distinterested stakeholder may not be subject to liability for its failure to resolve the controversy over entitlement to the stake in one claimant's favor." *Id.*

Thus, the question here is whether Sierra's claims are, as in *Hovis*, claims to the annuity, in disguise, or, as in *Lee*, claims against F&G Life for conduct causing a dispute over the annuity.

In my view, Sierra's claim for promissory estoppel/detrimental reliance simply repackages its claim to the annuity, and therefore is not a proper counterclaim in an interpleader action. Sierra alleges that the Stadfeld email "constituted a promise, assurance and undertaking from F&G Life *that Sierra would receive the [annuity] payments*." Compl. ¶ 35 (emphasis added). Because Sierra's entitlement to the annuity payments will only be resolved through a decision in the interpleader action, however, Sierra's detrimental reliance claim is, in effect, identical to the counterclaim alleged in *Hovis*. Like the claimant in *Hovis*, Sierra's claim is nothing more than an assertion that F&G Life is liable in the event Sierra does not receive the annuity payments. This is made evident from the fourth element of the cause of action for detrimental reliance: a resulting "detriment which can only be avoided *by the enforcement of the promise*." *Pavel Enters., Inc. v. A.S. Johnson Co.*, 342 Md. 143, 166, 674 A.2d 521, 532 (1996) (emphasis added) (quoting Restatement (Second) of Contracts § 90(1)).

In other words, Sierra's detrimental reliance claim is premised on the resolution of the interpleader action in favor of another claimant, and requires, as relief, specific enforcement of the "promise" of entitlement to the annuity payments. As discussed above, however, "a disinterested stakeholder may not be subject to liability for its failure to resolve the controversy over entitlement to the stake in one claimant's favor." *Lee*, 688 F.3d at 1014.

Conversely, Sierra's claim for negligent misrepresentation is not barred by the interpleader action.  Unlike in *Hovis*, Sierra's negligent misrepresentation claim does not assert that Sierra is entitled to the annuity payments, or that F&G Life is liable for failing to resolve the controversy in favor of a particular claimant.  Rather, as in *Lee*, Sierra has alleged that the stakeholder's tortious conduct induced Sierra to purchase rights to the annuity, thereby *causing* the controversy in which Sierra now finds itself embroiled.  Consequently, the initiation of the interpleader action does not bar the assertion of Sierra's Counterclaim with respect to the claim of negligent misrepresentation.

I acknowledge that, as F&G Life contends, the Interpleader Order specifically discharges F&G Life as a party to the interpleader action, and therefore it is no longer a "party" subject to counterclaims under the Federal Rules of Civil Procedure.  *See* Motion ¶¶ 1-3.  Critically, however, and through no fault of Sierra, which was joined as a necessary party *after* entry of the Interpleader Order, the claims at issue here had not been filed at the time interpleader was granted.[9]

### B.  Motion to Dismiss for Failure to State a Claim

I am nevertheless persuaded that, in Count V, Sierra has failed to state a claim that would entitle it to relief on a theory of negligent misrepresentation.  Moreover, even if Count IV were not barred, Sierra has also failed to state a claim for promissory estoppel/detrimental reliance.

---

[9] In the interests of justice, I would certainly be willing to reconsider the Interpleader Order should the claims prove likely to survive the pleadings stage.  *See* Fed. R. Civ. P. 60(b).  However, as discussed below, they do not, and therefore I see no need to address this issue, or any of the other arguments asserted by F&G Life in its Motion.

Under Maryland law,[10] a claim for negligent misrepresentation is composed of the following elements:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;
> (2) the defendant intends that his statement will be acted upon by the plaintiff;
> (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;
> (4) the plaintiff, justifiably, takes action in reliance on the statement; and
> (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Gross v. Sussex Inc.*, 332 Md. 247, 259, 630 A.2d 1156, 1162 (1993).

Sierra's claim for negligent misrepresentation fails because Sierra has failed to identify any false statements in the Stadfeld email. As F&G Life observes, a subsequent dispute over the Mobley payments does not change the fact that the email accurately depicted F&G Life's records at the time the email was sent. In response, Sierra suggests that F&G Life knew of the

---

[10] F&G Life assumes, without discussion, that Maryland law applies to these claims. Sierra's Opposition does not dispute this assumption, and, curiously, relies on no law whatsoever. Where, as here, federal jurisdiction is premised on diversity of citizenship, a federal court is obligated to apply the choice-of-law rules of the forum state. *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) (citations omitted). Under Maryland choice of law rules, tort claims are governed by the law of the state where the injury occurs. *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 744-47, 752 A.2d 200, 230-32 (2000). Here, the injuries alleged in the negligent misrepresentation claim consist of harm suffered from involvement in the interpleader dispute, which has occurred and will occur in Maryland. Accordingly, I apply Maryland law to the negligent misrepresentation claim.

In contract type actions, of which a claim for promissory estoppel is one, *see Md. Transp. Auth. Police Lodge No. 34 of Fraternal Order of Police, Inc. v. Md. Dep't of Transp.*, 195 Md. App. 124, 214-15, 5 A.3d 1174, 1226-27 (2010), *rev'd on other grounds*, 240 Md. 141, 21 A.3d 1098 (2011), Maryland courts "apply the substantive law of the place where the contract was made." *Cont'l Cas. Co. v. Kemper Ins. Co.*, 173 Md. App. 542, 548, 920 A.2d 66, 69 (2007). Although I am not aware of a case applying this test to a promissory estoppel/detrimental reliance claim, which is premised on the *non*existence of a contract, I see no need to broach that issue now. The elements of such a claim are virtually identical among the various jurisdictions implicated by the formation of the "contract" here. *See, e.g., Pavel Enters.*, 342 Md. at 166, 674 A.2d at 532 (listing four elements of detrimental reliance claim, per Restatement (Second) of Contracts); *W.R. Grace & Co. v. Geodata Servs., Inc.*, 547 So. 2d 919, 924 (Fl. 1989) (same); *Chrysler Corp. (Delaware) v. Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1032 (De. 2003) (listing substantially identical four elements of promissory estoppel claim). Thus, I will apply Maryland law to this claim.

competing claims and, although Sierra has no factual basis for this belief, contends that such knowledge is an issue of fact to be settled by discovery.  But, that assertion is wholly speculative, and does "not permit the court to infer more than the mere possibility of misconduct," such that the claim may survive the motion to dismiss.  *See Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 556; *Simmons*, 634 F.3d at 768.

Moreover, Sierra has not alleged facts sufficient to demonstrate that F&G Life owed Sierra the requisite duty of care.  In a claim for negligent misrepresentation where, as here, the alleged injury is economic loss, Maryland requires an "intimate nexus" between the parties. *Weisman v. Connors*, 312 Md. 428, 446, 540 A.2d 783, 791 (1988).  "This intimate nexus is satisfied by contractual privity or its equivalent."  *Id.* (quoting *Jacques v. First Nat'l Bank*, 307 Md. 527, 534-35, 515 A.2d 756, 759-60 (1986)).  Sierra's new owners did not purchase the Mobley annuities from F&G Life, nor does the Counterclaim allege the existence of any equivalent privity between the two parties.  Accordingly, I will grant the motion to dismiss Count V, with leave to amend.

Sierra's claim for detrimental reliance/promissory estoppel likewise fails to allege facts that, if true, are sufficient to state a plausible claim for relief.  A claim of detrimental reliance in Maryland requires proof of four elements:

> (1) a clear and definite promise;
> (2) where the promisor has a reasonable expectation that the offer would induce action or forbearance on the part of the promisee;
> (3) which does induce actual and reasonable action or forbearance by the promisee; and
> (4) causes a detriment which can only be avoided by the enforcement of the promise.

*Pavel Enters.*, 342 Md. at 166, 674 A.2d at 532 (quoting Restatement (Second) of Contracts § 90(1)).  Detrimental reliance offers "an equitable remedy that permits recovery where, in fact,

there is no contract, but where circumstances are such that justice warrants a recovery." *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 626 (D. Md. 2003) (internal quotation omitted); *see also Md. Transp. Auth.*, 195 Md. App. at 214-15, 5 A.3d at 1226-27.

Section 2 of the Restatement (Second) of Contracts defines "promise" as "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promise in understanding that a commitment has been made."   "A promisor manifests an intention if he believes or has reason to believe that the promise will infer that intention from his words or conduct."   Restatement (Second) of Contracts § 2 cmt. b.   "A clear and definite promise . . . is one that reasonably defines the contours of the action or forbearance." *McKenzie v. Comcast Cable Commc'ns, Inc.*, 393 F. Supp. 2d 362, 373 (D. Md. 2005).   Maryland courts have held that an "implied understanding or implied agreement" does not satisfy the first element of a claim for detrimental reliance. *Konover Property Trust, Inc. v. WHE Assoc's, Inc.*, 142 Md. App. 476, 484, 790 A.2d 720, 724-25 (2002).

Sierra's claim relies on the Stadfeld email, in which Stadfeld shared the information in F&G Life's possession regarding the Mobley annuity: that "Woodbridge [had] reassigned the lump sum payments . . . to Sierra," and confirmed that their records "indicate[d] that payments are to be sent to Sierra Finances."   Compl. Exh. D.   Sierra claims that this email "constituted a promise, assurance and undertaking from F&G Life that Sierra would receive the payments." Compl. ¶ 35.

The claim fails because there are no facts alleged to indicate that F&G made a "clear and definite promise" that Sierra would ultimately receive the payments. *See id.*  The Stadfeld email disclosed information held by F&G Life pertaining to the annuity payments, but made no promise regarding the results of future disputes to the payments, let alone a promise that was

"clear and definite."  At most, the email *implied* that Sierra was to receive the Mobley payments, which does not meet the requirement for detrimental reliance.  *See Konover*, 790 A.2d at 724-25; *see also Holland v. Psychological Assessment Resources, Inc.*, 2004 WL 1368873, at *3 (D. Md. June 16, 2004) (finding that defendant's "failure to say or do anything to discourage" plaintiff's development of products was not a clear and definite promise not to oppose it).  That Sierra ultimately relied on this information in purchasing the Mobley annuities – a point which Sierra presses – does not change the result.  Therefore, I will grant the motion to dismiss regarding Count IV.

## Conclusion

For the foregoing reasons, F&G Life's Motion to Dismiss (ECF 68) will be granted in full.  A separate Order, consistent with this Opinion, follows.


Date: October 12, 2012                    _____/s_____
                                          Ellen Lipton Hollander
                                          United States District Judge